```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION


Robert D. Hardy,              :

        Plaintiff,            :

   v.                         :     Case No. 2:12-cv-0715

Commissioner of Social        :     JUDGE EDMUND A. SARGUS, JR.
   Security,                        Magistrate Judge Kemp
                              :
        Defendant.
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Robert D. Hardy, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on August 26, 2008 and September 15, 2008, and alleged that plaintiff became disabled on December 21, 2007.

After initial administrative denials of his applications, plaintiff was given a hearing before an Administrative Law Judge on September 30, 2010.  In a decision dated October 21, 2010, the ALJ denied benefits.  That became the Commissioner's final decision on June 11, 2012, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on December 11 and December 13, 2012. Plaintiff filed his statement of specific errors on January 8, 2013.  The Commissioner filed a response on April 12, 2013.  No reply brief was filed, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 33 years old at the time of the administrative hearing and who completed the eleventh grade, testified as follows.  His testimony appears at pages 35-53 of the

administrative record.

The ALJ began by asking plaintiff about his marijuana use. Plaintiff stated he had not used since February of 2010 and that he had been in a recovery program since then.  Plaintiff testified that he last worked in 2008 through a temporary services agency, but only for a few days.  In 2007 he worked in a warehouse loading trucks.  He did not think he could do that job any more because of difficulties focusing and concentrating.

Plaintiff stated he did not drive and did not have a driver's license.  He stopped driving after being put on probation in 2005, but he never had a license.  He was also arrested for stealing license plates.

In response to questions from his attorney, plaintiff stated that he had been getting treatment for hearing voices.  He was taking medication for that problems as well as for anxiety and depression.  Even with the medication, he was still hearing voices and having visual hallucinations.  He also had nightmares which prevented him from sleeping.  He was always tired, which was also a side effect of his medications.  He did not often leave his apartment and did not like being around people.

### III.  The Medical Records

The medical records in this case are found beginning on page 253 of the administrative record.  All of the issue raised by plaintiff relate to his psychological condition, so the Court's review of the medical evidence will focus on those records.

Plaintiff was admitted to Twin Valley Behavioral Healthcare on June 20, 2008, with symptoms of depression, thoughts of suicide, and auditory hallucinations.  He reported having been increasingly anxious and depressed since the death of his fianceé in 2005, and also stated he had been hearing voices since he was 17.  He had no history of psychiatric treatment.  He admitted to daily marijuana use since age 17 and to some use of alcohol.  The diagnoses included major depressive disorder, recurrent, with psychotic features, cannabis dependence, and alcohol abuse in

early partial remission. He was started on various medications and on supportive psychotherapy. (Tr. 253-56). He had been seen at NetCare shortly before that, reporting essentially the same symptoms and receiving essentially the same diagnosis.

    Plaintiff then began seeing Dr. Nahar. In a note signed on September 11, 2008, Dr. Nahar diagnosed a schizoaffective disorder as well as chronic PTSD. He rated plaintiff's GAF at 50. At that time, plaintiff's medications were changed.

    Based on these records, Dr. Finnerty, a state agency reviewer, concluded that the file did not contain enough information to make a disability determination. He suggested obtaining third party information and noted that plaintiff had not responded to calls or letters. (Tr. 307).

    The file contains additional progress notes from Dr. Nahar from 2008 and 2009. For the most part, the notes indicate some response to medications, but otherwise the continuation of the same type of symptoms.

    A state agency reviewer, Dr. Hoyle, expressed an opinion about plaintiff's condition in a report dated January 22, 2009. Dr. Hoyle thought that plaintiff suffered from a schizoaffective disorder, anxiety, and substance addiction, and that he had moderate difficulties in social functioning and in maintaining concentration, persistence and pace. The form completed by Dr. Hoyle notes a moderate impairment in maintaining concentration and attention for extended periods, keeping a schedule, sustaining an ordinary routine, working around others, completing a workday and work week without interruption from psychologically-based symptoms, and several other moderate restrictions. In the narrative portion of the report, Dr. Hoyle identifies some concern about whether plaintiff was disabled based on the fact that he had been able to work for several years with these symptoms. Dr. Hoyle also noted that plaintiff performed activities of daily

living such as making meals, doing household chores, paying bills, reading, and visiting with family, and concluded that plaintiff could do simple tasks in a static environment without strict time or production quotas and could interact with others occasionally and superficially but would work best on his own.  (Tr. 340-57).

Dr. Nahar, however, was of a different opinion, describing plaintiff as having either marked or extreme limitations in fifteen separate areas of work-related activities.  (Tr. 358).  As an explanation for his opinion, he referred to office notes.  Those notes showed some improvement in plaintiff's symptoms and that he was attending job classes, but they still reflected a good deal of depression.  Dr. Nahar also filled out a different form indicating that plaintiff had marked restrictions in three of four work-related areas (behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability).  (Tr. 384-85).  He also indicated that all of plaintiff's symptoms were caused by his schizoaffective disorder and not by substance abuse.  (Tr. 517).

The only other significant records are, first, a NetCare note from 2010 indicating that plaintiff was having issues after having been off his medication for three weeks, and, second, a letter dated October 1, 2010 stating that plaintiff had been sober for seven months. (Tr. 520-28, 529).

### IV.  The Vocational Testimony

A vocational expert, Mr. Brown, also testified at the administrative hearing.  His testimony begins at page 53 of the record.

Mr. Brown confirmed, through questioning plaintiff, that plaintiff had worked as a fast food restaurant cook for a number of years.  That job is light and semi-skilled.  Plaintiff's other work was described as stores laborer, which is usually performed at the medium exertional and is unskilled.  Plaintiff performed

-4-

the job at the heavy exertional level, however.

Mr. Brown was asked to assume that plaintiff could work at all exertional levels and was able to understand, remember and carry out simple tasks and instructions, was able to maintain concentration and attention for two-hour segments over an eight-hour work period, could respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others was casual and infrequent, and could adapt to simple changes and avoid hazards in a setting without strict production standards. With those restrictions, plaintiff could, in Mr. Brown's view, both do his past work as a stores laborer and could also perform a number of unskilled medium jobs such as machine tender, hand packager, and cleaner. Over 5,000 such jobs existed locally, and almost 900,00 nationally. However, if plaintiff were as limited as Dr. Nahar indicated, he could not work.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 8 through 21 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements for disability benefits through March 31, 2011. Next, plaintiff had not engaged in substantial gainful activity from his alleged onset date of December 21, 2007 through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had only one severe impairment, namely depression. The ALJ also found that plaintiff's impairment did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff could work at all exertional levels and was able to understand, remember and carry out simple tasks

and instructions, was able to maintain concentration and attention for two-hour segments over an eight-hour work period, could respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others was casual and infrequent, and could adapt to simple changes and avoid hazards in a setting without strict production standards.  The ALJ found that, with these restrictions, plaintiff could still perform his past relevant work as a stores laborer, and could also perform jobs identified by the vocational expert such as machine tender, hand packager, and cleaner.  Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

## VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises three issues.  He argues that the ALJ improperly rejected Dr. Nahar's opinions and also failed to incorporate those limitations into the questions posed to the vocational expert.  Further, he requests that, if the case is remanded for further proceedings, the Court should order the Commissioner to retain a medical expert.  The Court generally reviews these contentions under this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v.

Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In any case where the plaintiff challenges the ALJ's analysis of the opinion of a treating physician (which is entitled to deference if properly supported and consistent with the other evidence of record, see 20 C.F.R. §404.1527), the Court begins by describing in some detail the reasons given by the ALJ for discounting the treating source's opinion. Here is what the ALJ in this case said about Dr. Nahar's views on disability:

> As to the opinion evidence, the claimant's treating physician, Shamsun Nahar M.D., issued two opinions regarding the claimant's ability to perform work related activities, one in February 2009 and one in February 2010. These opinions were given in the form of a checklist and indicated that the claimant was at least "Markedly Limited" in nearly all work related activities (Ex. 10F, 11F/1-2). Additionally, Dr. Nahar stated that the claimant had "Extreme" limitations in his activities of daily living and episodes of deterioration (Ex 11F/4). Although Dr. Nahar is the claimant's treating physician, I give these opinions little weight, as they are inconsistent with the medical record of evidence and the claimant's activities of daily living. The claimant has admitted at the hearing and in the record that his activities of daily living are relatively unaffected by his impairment. He plays basketball, writes poetry, reads, watches television, and performs housework (Ex. 14E.5). He also reported that he is able to care for his

>children, which includes picking them up, feeding them, and taking them home (Ex 4F/4).  This shows that the claimant is not as limited as Dr. Nahar indicates in her opinions.  The record also shows that the claimant has had no extended episodes of decompensation. Additionally, Dr. Nahar issued both opinions in the form of a checklist, which is not as persuasive as a written analysis which discusses the basis behind the opinion.

Tr. 24-25.  The ALJ went on to discuss Dr. Hoyle's opinion, describing its findings and giving it "great weight, as it is consistent with the medical record of evidence and the claimant's activities of daily living."  (Tr. 25).

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision.

Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Here, plaintiff makes the related arguments that the ALJ's decision, although it states in conclusory fashion that Dr. Nahar's opinion is "inconsistent with the medical record of evidence," does not adequately explain that alleged inconsistency - in plaintiff's words, it does not "provide citations to the record in support of this conclusion" (Statement of Errors, Doc. 16, at 9), and, in any event, Dr. Nahar's treatment notes (which make up most of the medical evidence) "consistently indicate abnormal motor activity, affect, mood, thought content (including auditory and/or visual hallucinations); and memory." Id. The Court agrees that the ALJ did not adequately articulate the bases for rejecting Dr. Nahar's opinion.

One of the reasons why an ALJ must articulate the basis of his or her rejection of a treating source's opinion is to allow the reviewing Court to determine if the rejection is properly based upon the evidence of record. See Wilson, supra; see also Bowen v. Comm'r of Social Security, 478 F.3d 742, 749 (6th Cir. 2007)("the goals of § 1527(d)(2) cannot be satisfied by bald speculation"). As the Court of Appeals has observed, "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." Friend v. Comm'r of Social Security, 375 Fed. Appx. 543, 552 (6th Cir. Apr. 28, 2010). See also Blackburn v. Colvin, 2013 WL 3967282, *7 (N.D. Ohio July 21, 2013)(finding the ALJ's articulation of this factor inadequate because "[w]hile the ALJ concluded that the treating physician's opinions were inconsistent with the medical evidence, he does not offer any explanation for his conclusion"). The same is true here; the purported inconsistency with the plaintiff's description of his

activities of daily living will be discussed below, but there is absolutely nothing in the ALJ's decision which would allow either the plaintiff or this Court to determine what part of the medical record the ALJ found to be inconsistent with Dr. Nahar's opinions.

Further, as the Friend decision explains, "even when an ALJ correctly reaches a determination that a treating source's medical opinion is inconsistent with the other substantial evidence in the record, such a determination 'means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.'" Id. at 551, quoting Blakley v. Comm'r of Social Security, 581 F.3d 399, 408 (6th Cir. 2009). This Court has held that even if a treating source opinion is not consistent with other evidence of record or not well-supported, an "ALJ err[s] as a matter of law by omitting from his analysis a discussion or consideration of whether ... any weight was due these medical source opinions under any of the remaining factors of the Regulations." Lewis v. Astrue, 2009 WL 689052, *7 (S.D. Ohio Feb. 24, 2009), citing Wilson, supra. The conclusory statement that the ALJ assigned "little weight" to Dr. Nahar's opinions without discussing any of the other regulatory factors also falls short of what Wilson and its progeny require.

The other significant issue in this case is the ALJ's determination that plaintiff's activities of daily living were inconsistent with marked or extreme psychological limitations. Relying primarily on the information in Exhibit 14E, the ALJ found that those activities included household chores, cooking, driving, lifting weights, playing sports, and shopping for groceries.  That document (Tr. 238-43), which includes a background questionnaire completed by plaintiff, consists of questions which simply ask whether the plaintiff is "able" to do certain physical activities.  There is no dispute in this case that plaintiff's physical capabilities are essentially unlimited.

-10-

The only questions which appear to relate to his psychological state are those which ask about his typical day; there, plaintiff said that his day consisted of getting up, going to treatment, going home, lifting weights, reading, and going to bed.  Nothing in that statement is inconsistent with his testimony at the administrative hearing that he leaves his house primarily to go to treatment or to substance abuse counseling, that he suffers from hallucinations, and that he could not concentrate in a work setting or be around other people, nor is it inconsistent with the observations made by Dr. Nahar.  Further, plaintiff completed another form (Ex. 11E, Tr. 219-27) dealing more specifically with psychological limitations.  He indicated there that he had difficulty concentrating, remembering, finishing tasks, and coping with anger, that he only left home twice a week, that he needed to be reminded to go places, that he did not get along with family or others, that he shopped for necessities no more than two hours per month, and that his cooking consisted of preparing TV or frozen dinners.  The ALJ made no mention of that document at all other than a brief reference to it in connection with a comment that plaintiff identified inability to pay child support as a stressor, but appeared to have the money to abuse alcohol and drugs.  It strongly appears that the ALJ engaged in a selective reading of the record - choosing to credit certain statements made by plaintiff about what he can do, but disregarding his statements about what he cannot - instead of considering the record as a whole.  This, too, is error.  <u>See, e.g, Rogers v. Comm'r of Social Security</u>, 486 F.3d 234, 247 (6th Cir. 2007)("the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record,'" <u>quoting</u> Social Security Ruling 96-7p); see also <u>Callahan v. Astrue</u>, 2012 WL 2931175, *8 (S.D. Ohio July 18, 2012), <u>adopted and affirmed</u> 2012 WL 3245523 (S.D. Ohio Aug 09, 2012)(the ALJ "may not selectively

reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not"), citing Howard v. Comm'r of Social Security, 276 F.3d 235, 240-41 (6th Cir. 2002).

Plaintiff's final argument is that, if the case is remanded, the Commissioner be directed to retain a medical expert.  He cites no authority for this request.

In Smith v. Comm'r of Social Security, 2010 WL 6303884, *6 (S.D. Ohio Nov 24, 2010), adopted and affirmed 2011 WL 1125031 (S.D. Ohio Mar 24, 2011), this Court said:

> As the court observed in Griffin v. Astrue, 2009 WL 633043 *10 (S.D. Ohio March 6, 2009), "[t]he primary function of a medical expert is to explain, in terms that the ALJ, who is not a medical professional, may understand, the medical terms and findings contained in medical reports in complex cases." Whether to call such an expert to testify is generally left to the discretion of the ALJ, see id., quoting Haywood v. Sullivan, 888 F.2d 1463, 1467–68 (5th Cir. 1989), and the Court may overturn the exercise of that discretion only if it appears that the use of a medical consultant was necessary — rather than simply helpful — in order to allow the ALJ to make a proper decision. See Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 214 (6th Cir.1986), quoting Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977).

Plaintiff bases his argument on the ALJ's failure to give proper weight to Dr. Nahar's opinion, but that is not the same thing as the inability to understand either the medical issues in the case or the opinions expressed by the treating and non-treating sources.  There is nothing in this record to indicate such a lack of understanding; to hold otherwise would be to require the retention of a medical expert in any case where an ALJ erred in her evaluation of the medical evidence, and that is clearly not the law.  The Court finds no merit in this last argument, but

concludes, on the basis of the first two issues advanced in plaintiff's statement of errors, that a remand is necessary.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).


/s/ Terence P. Kemp
United States Magistrate Judge